UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JON WARREN LARSON,<br><br>                                    Plaintiff,<br><br>v.<br><br>D. PARAMO; DR. WALKER; DR. J. CHAU; DR. NEWTON; DR. S. ROBERTS; R.N. GIL; R.N. T. PAULE; R.N. WINZEL; DR. KRISTEN DEAN,<br><br>                                    Defendant. | Case No.:  3:15-cv-0308-BTM-BGS<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |

        Jon Warren Larson ("Plaintiff"), a prisoner currently incarcerated at the Richard J. Donovan Correctional Facility ("RJD"), is proceeding pro se in this civil action, which he commenced with a Complaint filed on February 12, 2015, pursuant to 42 U.S.C. § 1983. See Compl. (ECF Doc. No. 1).

**I.      Procedural History**

        On April 22, 2015, the Court granted Plaintiff leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a)  and found that Plaintiff's Complaint contained plausible claims for relief which were sufficient to survive the "low threshold" for proceeding past

1  the sua sponte screening required by 28 U.S.C. §§ 1915(e)(2) and 1915A(b).[1]  See Apr.

2  22, 2015 Order (ECF Doc. No. 3.); see also Wilhelm v. Rotman, 680 F.3d 1113, 1123

3  (9th Cir. 2012).   U.S. Marshal was directed to effect service of Plaintiff's Complaint on

4  his behalf pursuant to 28 U.S.C. § 1915(d) and Fed.R.Civ.P. 4(c)(3).

5          Plaintiff was later granted leave to file a First Amended Complaint ("FAC").  See

6  FAC (ECF Doc. No. 37.)  On October 26, 2015, Defendants filed a Motion to Dismiss

7  Plaintiff's FAC pursuant to Fed.R.Civ.P. 12(b)(6).  (ECF Doc. No. 45.)  After being

8  granted an extension of time, Plaintiff filed his Opposition to Defendants' Motion and

9  Defendants have filed a Reply.  (ECF Doc. Nos. 65, 66.)

10  **II.    Plaintiff's Allegations**

11          On September 11, 2014, Plaintiff was housed at RJD.  See FAC at 15.  Plaintiff

12  went to the "Prison Infirmary Emergency Room" at RJD to have a wart removed from his

13  left leg.  Id.  Plaintiff was examined by Dr. Newton who noted in Plaintiff's medical

14  records that Plaintiff had "complained for several months of pain and bleeding from what

15  appeared to be some type of wart for over seven years."  Id.  Plaintiff alleges that Dr.

16  Newton told him that he "could be" suffering from an "in grown hair."  Id.   Dr. Newton

17  then performed a procedure to "remove the spot" by using a "Number 5 punch biopsy."

18  Id. at 16.  Plaintiff was given a "numbing shot" and medication to "stop the flow of

19  bleeding."  Id.  The area removed was sent to a laboratory to "check for cancer."  Id.

20  Plaintiff alleges Dr. Newton "cauterized" the wound but failed to "give any cleaning

21  instructions" or provide any "antibiotics for the open wound."  Id.

22          Three days later, on September 14, 2014, Plaintiff was in the shower when he

23  "noticed blood on the wall in heavy streams," and he could see his left leg "squirt blood

---

[1]  Plaintiff was cautioned that "the sua sponte screening and dismissal procedure is cumulative of, and not a substitute for, any subsequent Rule 12(b)(6) motion that [a defendant] may choose to bring." Teahan v. Wilhelm, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007).  (ECF Doc. No. 3, fn. 1.)

1  approximately 3 to 4 feet." Id. at 10.  Plaintiff "wrapped" his leg with a towel and went

2  to Correctional Officer Gonzalez[2] who wrote him a pass to go to "Facility 'C' Medical."

3  Id. at 10-11.  Plaintiff claims he "stood in a 3 foot round puddle of blood for 3 to 5

4  minutes" before Nurse Gil came to examine him.  Id. at 11.  He claims Nurse Gil "only

5  gave me gauze and band aids" which Plaintiff refused.  Id.  Plaintiff maintained that he

6  needed to be examined at the Prison Infirmary and after five minutes of disagreement

7  with Nurse Gil, Plaintiff was ultimately sent to the Prison Infirmary.  Id.  At the

8  infirmary, Plaintiff was examined by LVN Wenzel who accused Plaintiff of "picking at

9  wound on left leg."  Id. at 13.

10       On September 17, 2014, Plaintiff was examined by Nurse Paule after informing

11  her that his leg had been "squirting blood 3 to 4 feet."  Id. at 12.  Defendant Paule

12  "cleaned the wound" and sent Plaintiff back to his housing unit.  Id. However, while later

13  taking a shower, the wound "started to bleed and squirt blood 3 to 4 feet."  Id.  Plaintiff

14  again wrapped his leg in a towel and went to Correctional Officer Cortez [3] who sent

15  Plaintiff to Facility "C" Medical.  Id.  Plaintiff was examined by Defendant Paule who

16  stated after seeing the "blood squirting" from Plaintiff's leg, "I thought you were lying

17  about it."  Id.  She further stated that the growth on this leg should have been "frozen

18  off."  Id.  Defendant Paule cleaned Plaintiff's wound, applied a "clear water proof

19  bandage" on his leg and noted in his medical records that his "leg was healed."  Id.

20       Two days later, on September 19, 2014, Plaintiff was in his GED class when he

21  noticed that he was "standing in a pool of purple blood approximately 3 to 4 feet in a

22  circle" and his "prison boot was full of blood."  Id. at 19.  Plaintiff told the classroom

23  instructor who called the "work change officers" who in turn called the "Emergency

24  Transport Vehicle."  Id.  Plaintiff was then transferred to the Prison Infirmary.  Id.

25

26
27  [2]  Correctional Officer Gonzalez is not a party to this action.
    [3]  Correctional Officer Cortez is not a party to this action.
28

3:15-cv-0308-BTM-BGS

1       Plaintiff was examined by Dr. Suleman[4] who "tried to stop the bleeding by using a

2   pressure bandage for thirty minutes." Id. at 20.  Ultimately, Defendant Suleman decided

3   to transfer Plaintiff from RJD to the Alvarado Hospital Emergency Room due to "arterial

4   bleed due to punch biopsy to Plaintiff's left leg." Id. at 16.

5   **III.   Defendants' Motion**

6       As stated above, Defendants have filed a Motion to Dismiss Plaintiff's FAC

7   pursuant to Fed.R.Civ.P. 12(b)(6) (ECF Doc. No. 45).  Specifically, Defendants argue

8   that Plaintiff fails to state an Eighth Amendment claim upon which relief can be granted

9   because his allegations "boil down to claims of negligence and/or medical malpractice."

10  See Defs.' Mem. of P&As' in Supp. of Mot. (ECF Doc. No. 45-1) at 6.  In addition,

11  Defendants argue that because there "are no valid federal claims, the Court should

12  decline to assert supplemental jurisdiction" over Plaintiff's state law claims.  Id.

13      **A.   Standard of Review**

14      A Rule 12(b)(6) dismissal may be based on either a "'lack of a cognizable legal

15  theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'"

16  Johnson v. Riverside Healthcare System, LP, 534 F.3d 1116, 1121-22 (9th Cir. 2008)

17  (quoting Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990)).  In other

18  words, the plaintiff's complaint must provide a "short and plain statement of the claim

19  showing that [he] is entitled to relief." Id. (citing Fed.R.Civ.P. 8(a)(2)).

20      "To survive a motion to dismiss, a complaint must contain sufficient factual

21  matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft

22  v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544,

23  570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content

24  that allows the court to draw the reasonable inference that the defendant is liable for the

25

26  ────────────────

27  [4]  Dr. Suleman is not a party to this action.

28

1   misconduct alleged." Id. at 679 (citing Twombly, 550 U.S. at 556).  "Threadbare recitals

2   of the elements of a cause of action, supported by mere conclusory statements, do not

3   suffice." Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555 (on motion to dismiss court

4   is "not bound to accept as true a legal conclusion couched as a factual allegation.").  "The

5   pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it

6   demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."

7   Iqbal, 556 U.S. at 678 (citations omitted).

8       In analyzing a pleading, the Court sets conclusory factual allegations aside, accepts

9   all non-conclusory factual allegations as true, and determines whether those non-

10  conclusory factual allegations accepted as true state a claim for relief that is plausible on

11  its face.  Iqbal, 556 U.S. at 676–684; Sprewell v. Golden State Warriors, 266 F.3d 979,

12  988 (9th Cir. 2001) (noting that the court need not accept legal conclusions, unwarranted

13  deductions of fact, or unreasonable inferences as true).  And while "[t]he plausibility

14  standard is not akin to a probability requirement," it does "ask[] for more than a sheer

15  possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (internal

16  quotation marks and citation omitted).  In determining plausibility, the Court is permitted

17  "to draw on its judicial experience and common sense." Id. at 679.

18      Nevertheless, claims asserted by pro se petitioners, "however inartfully pleaded,"

19  are held "to less stringent standards than formal pleadings drafted by lawyers." Haines v.

20  Kerner, 404 U.S. 519-20 (1972).  Thus, courts "continue to construe pro se filings

21  liberally when evaluating them under Iqbal." Hebbe v. Pliler, 627 F.3d 338, 342 & n.7

22  (9th Cir. 2010) (citing Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (noting

23  that courts "have an obligation where the petitioner is pro se, particularly in civil rights

24  cases, to construe the pleadings liberally and to afford the petitioner the benefit of any

25  doubt.")).

26      Finally, when resolving a motion to dismiss for failure to state a claim, the court

27  may not generally consider materials outside the pleadings, but it may consider exhibits

28

5

1   which are attached.  <u>See</u> Fed.R.Civ.P. 10(c) ("A copy of a written instrument that is an

2   exhibit to a pleading is a part of the pleading for all purposes."); <u>Schneider v. California</u>

3   <u>Dept. of Corrections</u>, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).  "The focus of any Rule

4   12(b)(6) dismissal ... is the complaint."  <u>Id</u>.

5       **B.    Official Capacity**

6           Defendants seek dismissal of Plaintiff's Complaint to the extent he seeks money

7   damages against them based on actions taken in their "official" capacity. While the

8   Eleventh Amendment bars a prisoner's section 1983 claims against state actors sued in

9   their official capacities, <u>Will v. Michigan</u>, 491 U.S. 58, 66 (1989), it does not bar damage

10  actions against state officials sued in their personal or individual capacities.  <u>Hafer v.</u>

11  <u>Melo</u>, 502 U.S. 21, 31 (1991); <u>Pena v. Gardner</u>, 976 F.2d 469, 472-73 (9th Cir. 1992).

12  When a state actor is alleged to have violated both federal and state law and is sued for

13  damages under section 1983 in his individual or personal capacity, there is no Eleventh

14  Amendment bar, even if state law provides for indemnification.  <u>Ashker v. California</u>

15  <u>Dep't of Corrections</u>, 112 F.3d 392, 395 (9th Cir. 1997).

16          The Supreme Court has made it clear that a plaintiff can establish personal liability

17  in a section 1983 action simply by showing that each official acted under color of state

18  law in deprivation of a federal right.  <u>Hafer</u>, 502 U.S. at 25.  Consequently, the Court

19  **GRANTS** Defendants' Motion to Dismiss on Eleventh Amendment grounds only to the

20  extent that Plaintiff seeks damages against them in their official capacity.

21      **C.    Claims against Warden Paramo, Roberts, Walker and Chao**

22          These Defendants seek to dismiss the claims against them on the grounds that

23  Plaintiff seeks to hold these Defendants liable in their supervisory capacity.  (<u>See</u> ECF

24  No. 45-1 at 9.)  As to Defendant Paramo, Plaintiff alleges that Paramo's position as

25  "Chief of Staff" caused him to be "responsible for supervising the provision of adequate

26  medical care for prisoners at [RJD]."  <u>FAC</u> at 7.  Plaintiff alleges Defendant Roberts,

27  Chief Medical Officer at RJD, and Defendant Walker, Chief Medical Officer at RJD,

28

6

"enacted inadequate policies and procedures respecting the provision of medical care for Plaintiff and failed to adequately monitor and properly train and supervise the medical staff at the CDCR." Id. at 6. As to Defendant Chau, it is not clear that Plaintiff is seeking to hold him liable in his supervisory capacity. However, it does not appear that Plaintiff has alleged any specific facts relating to Defendant Chau's direct involvement in his medical treatment.

Plaintiff continues to acknowledge in his Opposition to Defendants' Motion that he seeks to hold these Defendants liable in their supervisory capacity. (ECF No. 65 at 2-4.) However, the Court agrees with Defendants that Plaintiff's allegations against these Defendants are insufficient to show that they were personally liable for causing any violation of Plaintiff's rights. See Starr v. Baca, 652 F.3d 1202, 1205 (9th Cir. 2011) (noting that supervisors may be held individually liable in § 1983 suits only "when culpable action, or inaction, is directly attributed to them."). "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Iqbal, 556 U.S. at 676. Instead, Plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id.

In Moss v. Unites States Secret Service, 675 F.3d 1213 (9th Cir. 2012), as amended upon denial of rehr'g en banc, 711 F.3d 941 (9th Cir. Feb. 26, 2013), the Ninth Circuit summarized the factual allegations necessary to hold a supervisor liable and to defeat the respondeat superior bar after Iqbal. Id. at 967. Plaintiffs seeking to sue a supervisor based on the alleged unconstitutional acts of their subordinates under § 1983 must allege the supervisor:

> (1) ... set[] in motion a series of acts by others, or knowingly refus[ed] to terminate a series of acts by others, which they knew or reasonably should have known would cause others to inflict constitutional injury; (2) [took] culpable action or inaction in training, supervision, or control of subordinates; (3) ... acquiesc[ed] in the constitutional deprivation by

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

subordinates; or (4) [engaged in] conduct that shows a "reckless or callous indifference to the rights of others."

Id. (citing al-Kidd v. Ashcroft, 580 F.3d 949, 965 (9th Cir. 2009), overruled on other grounds, __ U.S. __, 131 S.Ct. 2074 (2011)); Starr, 652 F.3d at 1205-06.

Here, the Court finds that Plaintiff has alleged conclusory allegations that are insufficient to find that any of the named supervisory Defendants were personally involved in or personally responsible for Plaintiff's medical care. Thus, the allegations in his FAC are insufficient for the Court to find that these Defendants "set in motion" any series of events, took any "culpable action, or inaction" which may be "directly attributable" to any constitutional violation related to Plaintiff's medical care. Starr, 652 F.3d at 1205. Plaintiff does not allege that these Defendants were even made aware of his medical condition while he was seeking treatment. Starr, 652 F.3d at 1207 ("[A] plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury.") (internal citation omitted). Nor does Plaintiff provide any "factual content" from which to a "reasonable inference" could be drawn that these Defendants in some way failed to adequately train, supervise or control the other named Defendants. Iqbal, 556 U.S. at 679. Thus, while Plaintiff contends Defendants Paramo, Roberts, Walker and Chau were "deliberately indifferent" to his medical condition, his pleading offers no more than the type of "naked assertions devoid of further factual enhancement," Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 557), which are insufficient to "nudge" his Eighth Amendment claims against Defendants "across the line from conceivable to plausible." Id. at 680 (citing Twombly, 550 U.S. at 570).

Thus, because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," "do not suffice" to establish individual liability under 42 U.S.C. § 1983, Iqbal, 556 U.S. at 678, the Court **GRANTS** Defendants' Paramo, Roberts, Walker and Chao's Motion to Dismiss Plaintiff's Eighth Amendment claims

8

1    against them based on their supervisory role.

2    **D.      Claims against Defendant Chau**

3    There is a suggestion in Plaintiff's FAC that Defendant Chau was directly involved

4    in Plaintiff's medical care.  In his FAC, he claims that Defendant Paule said to him that

5    she "thought Dr. Chau said [Plaintiff's wart] was supposed to be frozen off."  FAC at 12.

6    In addition, Plaintiff claims that "Dr. J. Chau and Dr. P. Newton did a biopsy cutting an

7    artery in leg" and that "Dr. J. Chau ordered the wart frozen off."  (Id. at 20.)  In the

8    majority of his FAC, along with the documents Plaintiff has attached to his FAC as

9    exhibits, Plaintiff alleges that the procedure was performed by Defendant Newton and

10   Defendant Chau was not mentioned as being present during this procedure.   Plaintiff's

11   allegations suggest that Defendant Chau recommended a different procedure that was not

12   performed.

13   "Because vicarious liability is inapplicable to . . . § 1983 suits," Plaintiff "must

14   plead that each Government-official defendant, though the official's own individual

15   actions, has violated the Constitution."  Iqbal, 556 U.S. at 676.  Plaintiff's FAC, however,

16   contains no further "factual enhancement" to describe what Defendant Chau did with

17   regard to the medical procedure he underwent or how Defendant Chau was involved in

18   the ultimate outcome; Estate of Brooks v. United States, 197 F.3d 1245, 1248 (9th Cir.

19   1999) ("Causation is, of course, a required element of a § 1983 claim.").  "The inquiry

20   into causation must be individualized and focus on the duties and responsibilities of each

21   individual defendant whose acts or omissions are alleged to have caused a constitutional

22   deprivation."  Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) (citing Rizzo v. Goode,

23   423 U.S. 362, 370-71 (1976));  Berg v. Kincheloe, 794 F.2d 457, 460 (9th Cir. 1986).

24   A person deprives another "of a constitutional right, within the meaning of section

25   1983, if he does an affirmative act, participates in another's affirmative acts, or omits to

26   perform an act which he is legally required to do that causes the deprivation of which [the

27   plaintiff complains]."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  There is no

28

9

respondeat superior liability under 42 U.S.C. § 1983.  Palmer v. Sanderson, 9 F.3d 1433, 1437-38 (9th Cir. 1993).

Thus, without some specific "factual content" that might allow the Court to "draw the reasonable inference" that Defendant Chau may be held personally liable for any unconstitutional conduct regarding Plaintiff's medical care, the Court finds his claims against Defendant Chau, as currently pleaded, contains only the type of "defendant-unlawfully-harmed-me accusations," which Iqbal makes clear, fail to "state a claim to relief that is plausible on its face."  Iqbal, 556 U.S. at 568.

Therefore, Defendant Chau's Motion to Dismiss Plaintiff's Eighth Amendment claims against him is **GRANTED**.

### E.    Claims against Defendant Dean

Defendant Dean seeks dismissal of all the claims against her on the grounds that she cannot be held liable for constitutional claims arising from her role in responding to Plaintiff's health care grievances.  (ECF No. 45-1 at 10-12.)  As Defendants point out in their Motion, Defendant Dean is only alleged to have become aware of Plaintiff's medical complaints *after* he had been treated and *after* his medical condition had become resolved.  Id. at 12.  Plaintiff alleges that he was first interviewed by Defendant Dean on September 24, 2014.  Id. at 17.  However, Plaintiff alleges that the treatment he received on September 19, 2014 while at the Alvarado hospital finally resolved his issue.  Id. at 16. To be liable for deliberate indifference to a serious medical need an "official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  Plaintiff does not allege that Defendant Dean had any knowledge of his medical condition while he was seeking treatment and cannot hold this Defendant liable simply for responding to a grievance.  See Peralta v. Dillard, 744 F.3d 1076, 1085 (9th Cir. 2014) (finding there can be no liability on the part of the Chief Medical Officer ("CMO"), who was "required to review -- and did --sign" plaintiff's grievance, without a

finding that he knew of inmate's complaints.)

Therefore, Defendant Dean's Motion to Dismiss all claims against her found in Plaintiff's FAC is GRANTED.

**F.     Eighth Amendment claims**

Defendants move to dismiss Plaintiff's Eighth Amendment inadequate medical care claims on the grounds that they were not deliberately indifferent to his serious medical needs.  Where an inmate's claim is one of inadequate medical care, the inmate must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976).  Such a claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997).   By establishing the existence of a serious medical need, an inmate satisfies the objective requirement for proving an Eighth Amendment violation.  Farmer, 511 U.S. at 834.

In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with a prescribed course of medical treatment, or it may be shown by the way in which prison medical officials provide necessary care.  Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988).  Before it can be said that an inmate's civil rights have been abridged with regard to medical care, however, "the indifference to his medical needs must be substantial.   Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06).  See also Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).

1.     Claims against Defendant Newton

When Plaintiff was initially examined on September 11, 2014, he claims Newton "noted in Plaintiff's medical records that Plaintiff had complained for several months of

1   pain and bleeding from what appeared to be some type of wart." FAC at 15.  Newton

2   indicated that Plaintiff "could be suffering from an in grown hair." Id.  Newton

3   "performed a number 5 punch biopsy" to remove the apparent wart on Plaintiff's leg. Id.

4   at 9.  Plaintiff alleges this procedure resulted in a "half inch wide hole and an eighth of an

5   inch deep wound" on his leg. Id.  In addition, Plaintiff claims Newton then "tried to burn

6   the wound close." Id.  Plaintiff also alleges that Newton did not "give any cleaning

7   instructions" or any "pain [medication] or antibiotics for the open wound." Id.  Plaintiff

8   alleges that during this procedure, Newton cut "an artery" which later caused excessive

9   bleeding.  (Id. at 20.)

10      Defendant Newton argues that Plaintiff's Eighth Amendment claim "fails under

11   both the objective and subjective prongs." (ECF No. 45-1 at 14.)  As to the first prong,

12   Newton argues that Plaintiff's initial medical condition, the wart on his leg, was not a

13   "serious medical need." (Id.)  "Because society does not expect that prisoners will have

14   unqualified access to health care, deliberate indifference to medical needs amounts to an

15   Eighth Amendment violation only if those needs are 'serious.'" Hudson v. McMillian,

16   503 U.S. 1, 9 (1992), citing Estelle, 429 U.S. at 103-104. "A 'serious' medical need

17   exists if the failure to treat a prisoner's condition could result in further significant injury

18   or the 'unnecessary and wanton infliction of pain.'" McGuckin, 914 F.2d at 1059

19   (quoting Estelle, 429 U.S. at 104).  "The existence of an injury that a reasonable doctor or

20   patient would find important and worthy of comment or treatment; the presence of a

21   medical condition that significantly affects an individual's daily activities; or the

22   existence of chronic and substantial pain are examples of indications that a prisoner has a

23   'serious' need for medical treatment." Id., citing Wood v. Housewright, 900 F.2d 1332,

24   1337-41 (9th Cir. 1990).

25      The Court agrees with Defendants that Plaintiff has not shown that the condition

26   for which he initially sought treatment is a "serious medical need."  There are no facts in

27   the FAC that would support a finding that a wart, or ingrown hair, could have resulted in

28

a "significant injury" or in any way "significantly" altered Plaintiff's daily activities. McGuckin, 914 F.2d at 1059.  The Court does find, however, that the allegations Plaintiff has raised with regard to excessive bleeding alleged to have occurred several days after the procedure could arguably be considered a "serious medical need."

As Defendants correctly note, Plaintiff does not allege that Newton had any involvement in his treatment following September 11, 2014.  Instead, he claims that Newton's "malpractice" led to the complications he had from this procedure that occurred several days after it was performed.  Therefore, the record shows that Plaintiff has not alleged facts sufficient to show a serious medical need when he was examined and treated by Newton and therefore, he cannot allege facts to satisfy the first prong of an Eighth Amendment claim against this Defendant.   Moreover, since Plaintiff does not allege that Newton was ever involved in his treatment relating to the excessive pleading, there are no facts to support a claim of "deliberate indifference" to a "serious medical need" as it relates to Newton.

In his Opposition, Plaintiff alleges that Newton was "not qualified" to perform the procedure for removing his wart and that it should have been performed "in an outside facility due to medical malpractice."  (ECF No. 65 at 4.)  The indifference to medical needs must be substantial; inadequate treatment due to malpractice, or even gross negligence, does not amount to a constitutional violation. Estelle, 429 U.S. at 106.

Therefore, the Court GRANTS Defendant Newton's Motion to Dismiss Plaintiff's Eighth Amendment claims.

### 2.   Claims against Defendants Gil, Paule and Wenzel

Defendants Gil, Paule and Wenzel move to dismiss the claims against them on the grounds that Plaintiff has failed to allege facts to show that they were "deliberately indifferent" to his serious medical needs.  (ECF No. 45-1 at 15-17.)

As to Gil, Plaintiff alleges that Gil was "negligent" and "intentionally denied and delayed Plaintiff's access to proper medical care."  FAC at 10.  On September 14, 2014,

1  three days after the procedure had been performed, Plaintiff discovered that he had

2  excessive bleeding from the wound.  Id.  Plaintiff was taken to the medical clinic by a

3  correctional officer where he was initially examined by Gil.  Id.  He claims Gil "came out

4  and saw all the blood, he tried to give me gauze and band aids" which Plaintiff refused.

5  Id.  Plaintiff claims he "argued [with Gil] for about 5 minutes at which time [Gil] sent me

6  to (TTA) to have leg looked at."  Id.

7        Based on Plaintiff's own allegations, it appears that the exchange between Gil and

8  Plaintiff lasted only a few minutes after which Plaintiff received treatment by another

9  individual.  A difference of opinion between a prisoner and the medical staff as to the

10  appropriate course or type of medical attention does not amount to deliberate

11  indifference, see Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012) (citing Sanchez v.

12  Vild, 891 F.2d 240, 242 (9th Cir. 1989)), and delays do not by themselves show

13  deliberate indifference, unless the delay is alleged to be harmful. See McGuckin, 974

14  F.2d at 1060; Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th

15  Cir. 1985).  Here, it is clear that Plaintiff disagreed with Gil's initial treatment proposal

16  and was delayed by minutes from receiving additional treatment.  There are no

17  allegations that Plaintiff suffered any additional harm due to this alleged delay in

18  treatment.  None of these claims rise to the level of "deliberate indifference" on the part

19  of Defendant Gil.

20        Therefore, the Court GRANTS Defendant Gil's Motion to Dismiss Plaintiff's

21  Eighth Amendment claims.

22        Three days after being examined by Defendant Gil, Plaintiff was seen by

23  Defendant Paule.  See FAC at 11.  Plaintiff told Paule that his wound was "squirting

24  blood."  Id.  Paule is alleged to have cleaned Plaintiff's wound and sent him "back to

25  housing unit."  Id. at 12.  Later that same day, Plaintiff claims the bleeding began again

26  and he was examined by Paule who "cleaned wound and put a clear waterproof bandage

27  on leg."  Id.

28

3:15-cv-0308-BTM-BGS

1    These allegations do not support a finding of "deliberate indifference" on the part

2  of Paule.  These allegations demonstrate that Paule examined and treated Plaintiff, when

3  he presented with his medical condition, on two occasions.  There are no allegations that

4  Paule refused to treat Plaintiff.  Again, while Plaintiff may disagree with the course of

5  treatment determined by Paule, he has not alleged any facts to show that Paule was

6  deliberately indifferent to his serious medical needs.  <u>See Snow</u>, 681 F.3d at 987.

7    Therefore, the Court GRANTS Defendant Paule's Motion to Dismiss Plaintiff's

8  Eighth Amendment claims.

9    Finally, as to Defendant Wenzel, Plaintiff's allegations are insufficient to state an

10  Eighth Amendment claim.  The only claim against Wenzel are Plaintiff's allegations that

11  he "spoke to LVN D. Wenzel" who allegedly "accused [Plaintiff] of picking at wound on

12  left leg from biopsy."  FAC at 13.  Plaintiff claims that these "accusations are false and

13  unprofessional."  <u>Id.</u>   Other than a comment made by Wenzel that Plaintiff found

14  "unprofessional," there are no allegations that Wenzel refused to examine and treat

15  Plaintiff or was in any way "deliberately indifferent" to his serious medical needs.

16    Therefore, the Court GRANTS Defendant Wenzel's Motion to Dismiss Plaintiff's

17  Eighth Amendment claims.

18    **G.    State Law Malpractice and Negligence claims**

19    Plaintiff responds to Defendants' Motion by claiming that Defendants Gil, Paule

20  and Wenzel failed to report his bleeding to a "medical doctor or a supervisor."  (ECF No.

21  65 at 5.)  Plaintiff claims that these Defendants' action rose to the level of "medical

22  malpractice."  (<u>Id.</u> at 4.)  He claims that he suffers "pain and suffering, emotional distress

23  and other injuries from their failure to provide Plaintiff with timely and appropriate

24  medical treatment."  (<u>Id.</u>)  These claims found in Plaintiff's Opposition and throughout

25  his FAC suggest that his claims are based in negligence and malpractice which, as stated

26  above, does not rise to the level of a constitutional violation.

27

28

3:15-cv-0308-BTM-BGS

1    Thus, to the extent that Plaintiff is seeking to bring claims under California state

2    law, the Court declines to exercise supplemental jurisdiction over these pendent state

3    claims at this time because Plaintiff cannot identify a violation of federal law.   <u>See</u> 28

4    U.S.C. § 1367(c)(3) ("The district court may decline to exercise supplemental jurisdiction

5    over a claim under subsection (a) if ... the district court has dismissed all claims over

6    which it has original jurisdiction."); <u>United Mine Workers of America v. Gibbs</u>, 383 U.S.

7    715, 726 (1966) ("if the federal claims are dismissed before trial, ... the state claims

8    should be dismissed as well.");   <u>Acri v. Varian Assoc</u>., Inc., 114 F.3d 999, 1000 (9th Cir.

9    1997) ("[O]nce judicial power exists under § 1367(a), retention of supplemental

10   jurisdiction over state law claims under 1367(c) is discretionary.")

## IV.   Conclusion and Order

12    Based on the foregoing, the Court ORDERS as follows:

13    Defendants' Motion to Dismiss Plaintiff's First Amended Complaint pursuant to

14   Fed.R.Civ.P. 12(b)(6) is GRANTED.  (ECF No. 45.)

15    The Court GRANTS Plaintiff leave to amend.  Plaintiff shall file a second

16   amended complaint within thirty (30) days of the filing of this Order.

17    IT IS SO ORDERED.

19   Dated: July 18, 2016

20                                          Hon. Barry Ted Moskowitz
                                            United States Chief District Judge

3:15-cv-0308-BTM-BGS