UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JON WARREN LARSON,<br><br>                           Plaintiff,<br><br>v.<br><br>D. PARAMO; DR. WALKER; DR. J. CHAU; DR. NEWTON; DR. S. ROBERTS; R.N. GIL; R.N. T. PAULE; R.N. WINZEL; DR. KRISTEN DEAN,<br><br>                           Defendant. | Case No.: 3:15-cv-0308-BTM-BGS<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** |

      Jon Warren Larson ("Plaintiff"), a prisoner currently incarcerated at Kern Valley State Prison, is proceeding in pro se in this civil action, which he commenced with a Complaint filed on February 12, 2015, pursuant to 42 U.S.C. § 1983. <u>See</u> Compl. (ECF Doc. No. 1).

**I.    Procedural History**

      On April 22, 2015, the Court granted Plaintiff leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) and found that Plaintiff's Complaint contained plausible claims for relief which were sufficient to survive the "low threshold" for proceeding past the sua sponte screening required by 28 U.S.C. §§ 1915(e)(2) and 1915A(b). <u>See</u> Apr. 22,

2015 Order (ECF Doc. No. 3.); see also Wilhelm v. Rotman, 680 F.3d 1113, 1123 (9th Cir. 2012). U.S. Marshal was directed to effect service of Plaintiff's Complaint on his behalf pursuant to 28 U.S.C. § 1915(d) and Fed.R.Civ.P. 4(c)(3).

Plaintiff was later granted leave to file a First Amended Complaint ("FAC"). See FAC (ECF Doc. No. 37.) On October 26, 2015, Defendants filed a Motion to Dismiss Plaintiff's FAC pursuant to Fed.R.Civ.P. 12(b)(6). (ECF Doc. No. 45.) After being granted an extension of time, Plaintiff filed his Opposition to Defendants' Motion and Defendants filed a Reply. (ECF Doc. Nos. 65, 66.)

The Court granted Defendants' Motion to Dismiss Plaintiff's FAC. (ECF Doc. No. 83.) Plaintiff was granted leave to file an amended pleading. (Id.) Plaintiff filed his Second Amended Complaint ("SAC") on February 10, 2017. (ECF Doc. No. 92.) Defendants have filed a Motion to Dismiss Plaintiff's SAC pursuant to Fed.R.Civ.P. 12(b)(6). (ECF Doc. No. 93.) Plaintiff has filed his Opposition to Defendants' Motion. (ECF No. 95.)

**II.     Plaintiff's Allegations**

On September 11, 2014, Plaintiff was housed at RJD. See SAC at 21. Plaintiff went to the "Prison Infirmary Emergency Room" at RJD to have a wart removed from his left leg. Id. at 21-22. Plaintiff was examined by Dr. Newton who noted in Plaintiff's medical records that Plaintiff had "complained for several months of pain and bleeding from what appeared to be some type of wart for over seven years." Id. at 22. Plaintiff alleges that Dr. Newton told him that he "could be" suffering from an "in grown hair." Id. Dr. Newton then performed a procedure to "remove the spot" by using a "Number 5 punch biopsy." Id. Plaintiff was given a "numbing shot" and medication to "stop the flow of bleeding." Id. The area removed was sent to a laboratory to check for cancer. Id. Plaintiff alleges Dr. Newton "attempted to burn the wound" to cauterize it but failed to "give any cleaning instructions" or provide any "antibiotics for the open wound." Id. at 22-23.

2

Three days later, on September 17, 2014, Plaintiff was in the shower when he noticed his left leg "squirt blood 3 to 4 feet." Id. at 16. Plaintiff "wrapped" his leg with a towel and went to Correctional Officer Cortez[1] who sent him to medical. Id. Plaintiff claims he "stood in a 3 foot round pool of arterial blood" but Defendant Gil refused to bring Plaintiff into medical to stop the bleeding. Id. at 14. He claims Nurse Gil "only gave me a couple band aids" which Plaintiff refused. Id. Plaintiff maintained that he needed to be examined at the Prison Infirmary and after five minutes of disagreement with Nurse Gil, Plaintiff was ultimately sent to the Prison Infirmary. Id.

At the infirmary, Plaintiff was examined by Nurse Paule after informing her that his leg had been "squirting blood 3 to 4 feet." Id. at 16. Defendant Paule "cleaned the wound" and sent Plaintiff back to his housing unit. Id. However, while later taking a shower, the wound "started to bleed and squirt blood 3 to 4 feet." Id. Plaintiff again wrapped his leg in a towel and was sent again to medical. Id. Plaintiff was examined by Defendant Paule who stated after seeing the "blood squirting" from Plaintiff's leg, "I thought you were lying about it." Id. She further stated that the growth on this leg should have been "frozen off." Id. Plaintiff alleges Defendant Wenzel was also present during the treatment by Defendant Paule. Id. at 18. Plaintiff claims Wenzel accused him of "picking at his leg wound from a biopsy without hearing what the Plaintiff had to say about the situation." Id.

Two days later, on September 19, 2014, Plaintiff was in his GED class when he noticed that he was "standing in a pool of purple blood approximately 3 to 4 feet in a circle" and his "prison boot was full of blood." Id. at 27. Plaintiff told the classroom instructor who called the "work change officers" who in turn called the "Emergency Transport Vehicle." Id. Plaintiff was then transferred to the Prison Infirmary. Id.

---

[1] Correctional Officer Cortez is not a party to this action.

Plaintiff was examined by Dr. Suleman[2] who "tried to stop the bleeding by using a pressure bandage" for thirty minutes Id. Ultimately, Defendant Suleman decided to transfer Plaintiff from RJD to the Alvarado Hospital Emergency Room to stop the bleeding. Id. at 27-28.

### III.   Defendants' Motion

As stated above, Defendants have filed a Motion to Dismiss Plaintiff's SAC pursuant to Fed.R.Civ.P. 12(b)(6) (ECF Doc. No. 93). Defendants maintain that Plaintiff has failed to state an Eighth Amendment claim against any of the named Defendants. See Defs.' Mem. of P&As' in Supp. of Mot. (ECF Doc. No. 93) at 2. In addition, Defendants argue that the Court should decline to assert supplemental jurisdiction over Plaintiff's state law claims. Id. at 10.

#### A.   Standard of Review

A Rule 12(b)(6) dismissal may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" Johnson v. Riverside Healthcare System, LP, 534 F.3d 1116, 1121-22 (9th Cir. 2008) (quoting Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990)). In other words, the plaintiff's complaint must provide a "short and plain statement of the claim showing that [he] is entitled to relief." Id. (citing Fed.R.Civ.P. 8(a)(2)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 679 (citing Twombly, 550 U.S. at 556). "Threadbare recitals

---

[2]   Dr. Suleman is not a party to this action.

4

of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555 (on motion to dismiss court is "not bound to accept as true a legal conclusion couched as a factual allegation."). "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (citations omitted).

In analyzing a pleading, the Court sets conclusory factual allegations aside, accepts all non-conclusory factual allegations as true, and determines whether those non-conclusory factual allegations accepted as true state a claim for relief that is plausible on its face. Iqbal, 556 U.S. at 676–684; Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001) (noting that the court need not accept legal conclusions, unwarranted deductions of fact, or unreasonable inferences as true). And while "[t]he plausibility standard is not akin to a probability requirement," it does "ask[] for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (internal quotation marks and citation omitted). In determining plausibility, the Court is permitted "to draw on its judicial experience and common sense." Id. at 679.

Nevertheless, claims asserted by pro se petitioners, "however inartfully pleaded," are held "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519-20 (1972). Thus, courts "continue to construe pro se filings liberally when evaluating them under Iqbal." Hebbe v. Pliler, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (noting that courts "have an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt.")).

Finally, when resolving a motion to dismiss for failure to state a claim, the court may not generally consider materials outside the pleadings, but it may consider exhibits which are attached. See Fed.R.Civ.P. 10(c) ("A copy of a written instrument that is an

5

exhibit to a pleading is a part of the pleading for all purposes."); Schneider v. California Dept. of Corrections, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). "The focus of any Rule 12(b)(6) dismissal ... is the complaint." Id.

### A. Claims against Defendants Paramo, Roberts and Walker

These Defendants again seek to dismiss the claims against them on the grounds that Plaintiff seeks to hold them liable in their supervisory capacity. (See ECF Doc. No. 93-1 at 3-4.) Plaintiff argues that Defendant Paramo should be held liable because he is the "Chief of Staff of all parties in this lawsuit" and "failed to adequately monitor and properly train and supervise the medical staff at RJD." SAC at 9. Plaintiff claims Defendants Roberts and Walker "failed to properly train each Defendant" and "failed to enact inadequate [sic] policies and procedures" in their position as Chief Medical Officer ("CMO") and Chief Medical Executive ("CME"). Id. at 7. He further claims that they failed to train Defendant Newton to follow the "proper chain of command" to obtain authorization to perform the "punch biopsy" procedure. Id. Plaintiff alleges Defendant Roberts was "responsible for training each Defendant in this [lawsuit] to report all such bleeding or arterial bleeding caused by medical staff to a supervisor." Id. at 8.)

In his Opposition, Plaintiff argues Defendant Walker "failed to properly train each Defendant and oversee each Defendant." (ECF No. 95 at 2.) Plaintiff argues Defendant Roberts "failed in his duty as the CME" to "oversee each Defendant." Id. Plaintiff makes the assertion in his Opposition that Defendant Roberts "was aware" of Plaintiff's "medical issues and failed to offer proper medical." Id. at 2-3. However, Plaintiff's original Complaint, FAC, and SAC contain no factual allegations that Defendant Roberts was ever directly involved in Plaintiff's medical care or was aware of the specific medical treatment that was provided to Plaintiff. In fact, such an allegation would directly contradict Plaintiff's allegations found throughout his SAC that Defendant Newton should be held liable because she failed to report the "punch biopsy" to her supervisors, including Defendants Walker and Roberts, in violation of CDCR policy. See

6

SAC at 6-7, 12, 16. Finally, as to Defendant Paramo, Plaintiff argues that he "failed to make sure Plaintiff received proper medical attention." (ECF Doc. No. 95 at 3.)

Once again, the Court finds that Plaintiff's allegations against these Defendants are insufficient to show that they were personally liable for causing any violation of Plaintiff's rights. See Starr v. Baca, 652 F.3d 1202, 1205 (9th Cir. 2011) (noting that supervisors may be held individually liable in § 1983 suits only "when culpable action, or inaction, is directly attributed to them."). "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Iqbal, 556 U.S. at 676. Instead, Plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id.

In Moss v. Unites States Secret Service, 675 F.3d 1213 (9th Cir. 2012), as amended upon denial of rehr'g en banc, 711 F.3d 941 (9th Cir. Feb. 26, 2013), the Ninth Circuit summarized the factual allegations necessary to hold a supervisor liable and to defeat the respondeat superior bar after Iqbal. Id. at 967. Plaintiffs seeking to sue a supervisor based on the alleged unconstitutional acts of their subordinates under § 1983 must allege the supervisor:

> (1) ... set[] in motion a series of acts by others, or knowingly refus[ed] to terminate a series of acts by others, which they knew or reasonably should have known would cause others to inflict constitutional injury; (2) [took] culpable action or inaction in training, supervision, or control of subordinates; (3) ... acquiesc[ed] in the constitutional deprivation by subordinates; or (4) [engaged in] conduct that shows a "reckless or callous indifference to the rights of others."

Id. (citing al-Kidd v. Ashcroft, 580 F.3d 949, 965 (9th Cir. 2009), overruled on other grounds, __ U.S. __, 131 S.Ct. 2074 (2011)); Starr, 652 F.3d at 1205-06.

Here, the Court finds that Plaintiff has alleged conclusory allegations that are insufficient to find that any of the named supervisory Defendants were personally

7

involved in or personally responsible for Plaintiff's medical care. Plaintiff's claims that Defendants should be held liable because Defendant Newton performed a procedure that he alleges "is not allowed to take place in any CDCR institution" and thus, she was not properly trained. SAC at 7. However, Plaintiff's assertion that this medical procedure is not "allowed to take place" within the CDCR is unsupported by any documentation or a cite to any specific policy or procedure. Even assuming that this is the CDCR policy, Plaintiff has not alleged any facts to show that Defendants Paramo, Roberts or Walker had any knowledge that this procedure was being performed by Defendant Newton. In fact, as stated above, Plaintiff argues throughout his SAC that Defendant Newton failed to report the use of this procedure to her supervisors, including Defendants Roberts and Walker.

Thus, the allegations in his SAC are insufficient for the Court to find that these Defendants "set in motion" any series of events, took any "culpable action, or inaction" which may be "directly attributable" to any constitutional violation related to Plaintiff's medical care. Starr, 652 F.3d at 1205. Plaintiff does not allege that these Defendants were even made aware of his medical condition while he was seeking treatment. Starr, 652 F.3d at 1207 ("[A] plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury.") (internal citation omitted). Nor does Plaintiff provide any "factual content" from which a "reasonable inference" could be drawn that these Defendants in some way failed to adequately train, supervise or control the other named Defendants. Iqbal, 556 U.S. at 679. Thus, while Plaintiff contends Defendants Paramo, Roberts, and Walker were "deliberately indifferent" to his medical condition, his pleading offers no more than the type of "naked assertions devoid of further factual enhancement," Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 557), which are insufficient to "nudge" his Eighth Amendment claims against Defendants "across the line from conceivable to plausible." Id. at 680 (citing Twombly, 550 U.S. at 570).

Therefore, because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," "do not suffice" to establish individual liability under 42 U.S.C. § 1983, Iqbal, 556 U.S. at 678, the Court **GRANTS** Defendants' Paramo, Roberts, and Walker's Motion to Dismiss Plaintiff's claims against them based on their supervisory role.

### D. Claims against Defendant Chau

Plaintiff alleges in his SAC that Defendant Chau was his "personal care physician." SAC at 10. Plaintiff further claims Defendant Chau is "guilty of failing to clearly write his order of having the "wart" on Plaintiff's leg "removed by 'freezing' the wart off which he originally was planning to have done." Id. at 10-11. Plaintiff claims if Defendant Chau had written these instructions clearly, Defendant Newton would not have performed the other procedure. Id. at 11.) Plaintiff claims this "punch biopsy" procedure is "illegal." Id.

Where an inmate's claim is one of inadequate medical care, the inmate must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). Such a claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997). By establishing the existence of a serious medical need, an inmate satisfies the objective requirement for proving an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with a prescribed course of medical treatment, or it may be shown by the way in which prison medical officials provide necessary care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988). Before it can be said that an inmate's civil rights have been abridged with regard to medical care, however, "the

9
3:15-cv-0308-BTM-BGS

1 indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06). See also Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).

Here, Plaintiff's claims against Defendant Chau only involve his claim that his handwriting was not legible. He does not allege that Defendant Chau played any role in his medical care involving the punch biopsy procedure or any medical treatment, or lack thereof, following this procedure. At most, Plaintiff's claims against Defendant Chau sound in negligence. However, as stated above, the indifference to medical needs must be substantial; inadequate treatment due to malpractice, or even gross negligence, does not amount to a constitutional violation. Estelle, 429 U.S. at 106.

In his Opposition, Plaintiff argues Defendant Chau "failed in his duty" to "report to his supervisors of all that went wrong with Plaintiff's arterial bleeding." (ECF Doc. No. 95 at 3.) Plaintiff makes this assertion in his Opposition, nowhere in his original Complaint, FAC, or SAC does he allege that Defendant Chau was aware of the treatment he received or any of the complications he experienced after the treatment was performed.

Thus, the Court finds Plaintiff has failed to allege facts sufficient to show that Defendant Chau was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.

### E. Claims against Defendant Newton

On September 11, 2014, Defendant Newton "performed a number 5 punch biopsy" to remove a wart on Plaintiff's leg. SAC at 12. Plaintiff alleges this procedure resulted in a "half inch wide hole the size of a dime and an eighth of an inch deep wound" on his leg. Id. Plaintiff claims that Defendant Newton "failed to receive" her supervisors "approval to do a procedure that is not an emergency or allowed to be done in any CDCR ER or facility." Id. Plaintiff also claims Defendant Newton "failed to order antibiotics"

or "any type of ointments." Id. Moreover, he claims Defendant Newton did not "order any follow ups to do wound checks or wound cleaning since it was an open wound." Id. at 13.

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" Hudson v. McMillian, 503 U.S. 1, 9 (1992), citing Estelle, 429 U.S. at 103-104. "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 914 F.2d at 1059 (quoting Estelle, 429 U.S. at 104). "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." Id., citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990). Here, the Court will presume for the purposes of this Motion that Plaintiff's factual allegations relating to the post procedure bleeding are sufficiently serious to warrant medical treatment.

As Defendants correctly note, Plaintiff does not allege that Newton had any involvement in his treatment following September 11, 2014 or that she was aware that he suffered from any bleeding following the procedure. In his SAC, Plaintiff claims that Defendant Newton performed an "illegal procedure" and should have obtained her supervisor's approval prior to performing the biopsy. SAC at 11-12. In his Opposition, Plaintiff claims Defendant Newton "caused pain & suffering and did a surgery not permitted." (ECF Doc. No. 95 at 2.) Plaintiff also claims that Defendant Newton was deliberately indifferent as she failed to "order antibiotics" for the "open wound" or provide "ointments, bandages or cleaning supplies." SAC at 12-13.

Plaintiff's allegations show that his serious medical need did not arise until September 14, 2014, the day he first began to experience blood loss. SAC at 14. This was three days after Defendant Newtown performed the procedure. Plaintiff does not allege that Newton was ever involved in his treatment relating to the excessive bleeding. Plaintiff only alleges that Defendant Newton performed a procedure that *later* caused complications from which his serious medical needs arose. Moreover, while Plaintiff claims that Newton should have provided him with antibiotics and "ointments," there were no allegations that he suffered from any infection as a result of the treatment or that antibiotics were ever necessary. There are no allegations that Plaintiff presented with complications at the time the procedure was performed that would have put Newton on notice that any additional care would be necessary. Even if Plaintiff believes he should have been given antibiotics, this amounts to a difference of opinion between an inmate and a medical professional. A difference of opinion between a prisoner and the medical staff as to the appropriate course or type of medical attention does not amount to deliberate indifference, see Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012) overruled on other grounds by Peralta, 744 F.3d at 1083 (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)),

Thus, there are no facts in Plaintiff's SAC to support a claim of "deliberate indifference" to a "serious medical need" as it relates to Newton. Therefore, the Court GRANTS Defendant Newton's Motion to Dismiss Plaintiff's Eighth Amendment claims.

**F.    Claims against Defendant Dean**

Plaintiff claims that Defendant Dean should be held liable for the manner in which she responded to Plaintiff's grievances and alleges that Defendant Dean was "involved [in a] cover up of the arterial bleeding due to a botched illegal procedure." SAC at 11-12.

Defendant Dean seeks dismissal of all the claims against her on the ground that she cannot be held liable for constitutional claims arising from her role in responding to Plaintiff's health care grievances. (ECF No. 93-1 at 7.) As Defendants argue in their

Motion, Defendant Dean is only alleged to have become aware of Plaintiff's medical complaints *after* he had been treated and *after* his serious medical condition had become resolved. Id. at 7. In his Opposition, Plaintiff argues that Defendant Dean "failed to give honest reports" to her supervisors and was "dishonest in her reports of appeals." (ECF No. 95 at 3.)

To be liable for deliberate indifference to a serious medical need an "official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. Plaintiff does not allege that Defendant Dean had any knowledge of his medical condition while he was seeking treatment and cannot hold this Defendant liable simply for responding to a grievance. See Peralta v. Dillard, 744 F.3d 1076, 1085 (9th Cir. 2014) (finding there can be no liability on the part of the Chief Medical Officer ("CMO"), who was "required to review -- and did --sign" plaintiff's grievance, without a finding that he knew of inmate's complaints.)

Therefore, Defendant Dean's Motion to dismiss all claims against her found in Plaintiff's SAC is GRANTED.

**G.     Claims against Defendants Gil, Paule, and Wenzel**

Unlike the other named Defendants, Gil, Paule, and Wenzel are alleged to have some role in the treatment of Plaintiff's bleeding. However, Defendants Gil, Paule, and Wenzel argue that they were not deliberately indifferent to his serious medical needs.

As to Gil, Plaintiff alleges that Gil was "negligent" and "intentionally denied and delayed Plaintiff's access to proper medical care." SAC at 14. On September 14, 2014, three days after the procedure had been performed, Plaintiff discovered that he had excessive bleeding from the wound. Id. In his SAC, Plaintiff claims that Defendant Gil saw "Plaintiff standing in a three feet round pool of arterial blood in front of Facility C medical and refused to bring [Plaintiff] into the medical to stop the bleeding." Id. Instead, Plaintiff alleges Defendant Gil "tried to only give Plaintiff a couple of band aids"

13

and send Plaintiff "back to his housing." Id. Plaintiff argued with Defendant Gil for "approximately five minutes" after which Defendant Gill "gave in and sent Plaintiff to (TTA) Emergency Room (ER)." Id. at 14-15.

Based on Plaintiff's own allegations, the exchange between Gil and Plaintiff lasted only a few minutes after which Gil sent Plaintiff to the ER to receive further treatment. Moreover, he does allege that Defendant Gil attempted to provide some treatment to Plaintiff but Plaintiff refused all treatment from Defendant Gil. As stated above, a difference of opinion between a prisoner and the medical staff as to the appropriate course or type of medical attention does not amount to deliberate indifference, see Snow, 681 F.3d at 987 (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)), and delays do not by themselves show deliberate indifference, unless the delay is alleged to be harmful. See McGuckin, 974 F.2d at 1060; Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). Here, it is clear that Plaintiff disagreed with Gil's initial treatment proposal and was delayed by minutes from receiving additional treatment. There are no allegations that Plaintiff suffered any additional harm due to this alleged delay in treatment. Plaintiff's own allegations indicate that Defendant Gil attempted to provide treatment to Plaintiff and did transfer him to an emergency room for more medical treatment. Thus, the Court finds that these allegations do not rise to the level of "deliberate indifference" on the part of Defendant Gil.

Therefore, the Court GRANTS Defendant Gil's Motion to Dismiss Plaintiff's Eighth Amendment claims.

Three days after being examined by Defendant Gil, Plaintiff was seen by Defendant Paule. See SAC at 15. Plaintiff told Defendant Paule that his wound was "squirting blood." Id. Defendant Paule is alleged to have cleaned Plaintiff's wound and sent him "back to housing unit." Id. at 16. Later that same day, Plaintiff claims the bleeding began again and he was examined by Defendant Paule who "put a pressure bandage on the wound." Id. Plaintiff claims Defendant Paule "failed to report the

14

arterial bleeding" which is a failure "to protect the Plaintiff's life in her professional capacity." Id.

These allegations do not support a finding of "deliberate indifference" on the part of Defendant Paule. These allegations instead demonstrate that Defendant Paule examined and treated Plaintiff when he presented with his medical condition. There are no allegations that Defendant Paule refused to treat Plaintiff. Again, while Plaintiff may disagree with the course of treatment determined by Defendant Paule or claim that Defendant Paul committed "medical negligence," he has not alleged any facts to show that Defendant Paule was deliberately indifferent to his serious medical needs. See Snow, 681 F.3d at 987.

Therefore, the Court GRANTS Defendant Paule's Motion to Dismiss Plaintiff's Eighth Amendment claims.

Finally, as to Defendant Wenzel, Plaintiff's allegations are insufficient to state an Eighth Amendment claim. The only claim against Defendant Wenzel are Plaintiff's allegations that he "spoke to LVN D. Wenzel" at the "(TTA) Prison medical ER" on September 14, 2014. SAC at 18. Plaintiff claims Defendant Wenzel "accused the Plaintiff of picking at his leg wound . . . without hearing what the Plaintiff had to say about the situation." Id. Plaintiff argues that Defendant Wenzel is "guilty" of failing to "report the arterial bleeding on an open would to a supervisor or contact an on call medical doctor to report a possible life threatening incident." Id. The incident with Defendant Wenzel is alleged to have occurred on the same day and in the same facility as the incident with Defendant Paule who is alleged to have provided medical treatment to Plaintiff. There are no allegations in Plaintiff's FAC or SAC that Defendant Wenzel actually played any role in either refusing to treat or inadequately treating Plaintiff's wound. Thus, the Court does not find that Plaintiff has sufficiently alleged any "deliberate indifference" on the part of Defendant Wenzel.

Therefore, the Court GRANTS Defendant Wenzel's Motion to Dismiss Plaintiff's Eighth Amendment claims.

### H. State Law Negligence claims

To the extent that Plaintiff is seeking to bring claims under California state law, the Court declines to exercise supplemental jurisdiction over these pendent state claims at this time because Plaintiff cannot identify a violation of federal law. See 28 U.S.C. § 1367(c)(3) ("The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... the district court has dismissed all claims over which it has original jurisdiction."); United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966) ("if the federal claims are dismissed before trial, ... the state claims should be dismissed as well."); Acri v. Varian Assoc., Inc., 114 F.3d 999, 1000 (9th Cir. 1997) ("[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary.")

## IV. Conclusion and Order

Based on the foregoing, the Court ORDERS as follows:

Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6) is GRANTED. (ECF No. 93.)

Plaintiff is **GRANTED** thirty (30) days leave from the entry of this Order in which to file a third amended complaint that addresses the pleading deficiencies identified in this Order, as well as the Court's previous orders. Plaintiff is cautioned, however, that should he choose to file a third amended complaint, it must be complete by itself, comply with Federal Rule of Civil Procedure 8(a), and that any claim not re-alleged will be considered waived. See S.D. CAL. CIVLR 15.1; Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); Lacey, 693 F.3d at 928 (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled."). If Plaintiff fails to follow these instructions and/or files a third amended

complaint that still fails to state a claim, his case will be dismissed without further leave to amend. See Lira v. Herrera, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

If Plaintiff does file an amended pleading, the Court will conduct a sua sponte screening pursuant to 28 U.S.C. § 1915(e) and § 1915A.

IT IS SO ORDERED.

Dated: September 13, 2017

Hon. Barry Ted Moskowitz
United States Chief District Judge